NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNIE DICKERSON,<br><br>                      Plaintiff,<br><br>v.<br><br>PALISADES MEDICAL CENTER, INC., *et al.*,<br><br>                      Defendants. | Civil Action No. 13-3382 (WJM)<br><br><br>REPORT & RECOMMENDATION |

**FALK, U.S.M.J.**

Before the Court is Plaintiff's motion to remand this case to state court. The motion is opposed. No argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, it is respectfully recommended that Plaintiff's motion be **granted**.

**BACKGROUND**

Plaintiff, Annie Dickerson, is a licensed practical nurse. Defendant Palisades Medical Center, Inc. ("Palisades") is a health care facility. Defendant Donna Cahill ("Cahill") and Defendant Ruben D. Fernandez ("Fernandez") are employees of

Palisades.[1]  (Compl. ¶¶ 1-6.)

Plaintiff is a former employee of Palisades.  Plaintiff claims that in April 2012, she "wrote up" two nurses for changing medical information in Palisades's computer system.  According to Plaintiff, Palisades retaliated by requiring Plaintiff to work a double shift and then failing to compensate her for the time worked.  Plaintiff subsequently filed a wage claim with the New Jersey Department of Labor and Workforce Development ("DOL").  (Compl. ¶¶ 1-6.)  Plaintiff alleges that in response to her wage claim, Palisades wrongfully accused her of stealing a narcotic drug, claimed that she falsified a medical record, suspended, and then ultimately terminated her employment.  (Compl. ¶¶ 14-15.)  Plaintiff further claims that Palisades made false representations to New Jersey's Board of Nursing in retaliation for Plaintiff applying for unemployment benefits.  (Compl. ¶ 16.)

On April 24, 2013, Plaintiff filed a fifteen count Complaint in state court.  Plaintiff brought claims for retaliatory discharge under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq*. ("CEPA") and a claim for violation of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1, *et seq* ("NJWPL").  Plaintiff also pleaded various state law causes of action, some sounding in tort, arising out of the same facts as Plaintiff's CEPA and NJWPL claims, including: common law wrongful discharge under *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (1980); intentional and negligent infliction

---

[1] For purposes of this remand motion, the Court will assume all factual allegations contained in Plaintiff's Complaint are true.  Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc., 809 F.2d 1006, 1010 (3d Cir. 1987).

of emotional distress; unjust enrichment; breach of the implied covenant of good faith and fair dealing, and *prima facie* tort.

On May 28, 2013, Defendants removed the case to this Court stating that Plaintiff's claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 141, *et seq*. ("LMRA"). Defendants argue that Plaintiff is a member of the Local 5030 Health Professionals and Allied Employees AFT/AFL-CIO ("the Union") and that her claims depend on an interpretation of the terms of a collective bargaining agreement ("CBA") between Palisades and the Union. (Defendants' Brief ("Def.'s Br.") 1-2.) Defendants contend that Plaintiff cannot defeat jurisdiction by simply casting her various state law claims as relating to CEPA or NJWPL. (Def.'s Br. 2.) Defendants maintain that Plaintiff's state law claims are substantially dependent on an analysis of the CBA. (Def.'s Br. 1.) On June 7, 2013, Plaintiff filed a motion to remand to state court, arguing that she has not alleged any federal causes of action and that her claims are not preempted because they do not require an interpretation of the CBA. (Plaintiff's Brief ("Pl.s Br.") 1.)

## DISCUSSION

A.  **Removal Standard**

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is

3

pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and all doubts are resolved in favor of remand. See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

**B.    Federal Jurisdiction**

A district court has original jurisdiction over cases that "arise under" federal law. See 28 U.S.C. § 1331, 1441(a). Pursuant to the "well-pleaded complaint" rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not allege a federal claim on its face. See Franchise Tax Bd. of Cal. v. Contr. Laborers Vac. Tr. for S. Ca., 463 U.S. 1, 10 (1983). Federal jurisdiction cannot be established by a federal defense or by challenging the merits of a claim. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). However, an exception to the well-pleaded complaint rule is the doctrine of complete preemption. See, e.g., Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000) ("One exception to [the well-pleaded complaint rule] is for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character."). The doctrine of complete preemption "creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint." Id.

Defendants contend that despite the absence of a federal claim in the Complaint,

federal jurisdiction is present by virtue of the complete preemption of Plaintiff's claims by Section 301 of the LMRA. Section 301(a) of the LMRA provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185 (a); see Textron v. United Automobile, 523 U.S. 653, 656-57 (1998). Section 301 preemption exists for "[1] claims founded directly on rights created by collective bargaining agreements, and [2] . . . claims substantially dependent upon an analysis of a collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988) (alterations added); see Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). Preemption is not lightly inferred. See Voilas v. General Motors Corp., 170 F.3d 367, 375 n.1 (3d Cir. 1999). Preemption does not arise simply because a collective bargaining agreement may be involved in a dispute. See Lingle, 486 U.S. at 412; see also e.g., Bonilla v. Starwood Hotels Resorts Worldwide, Inc., 407 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) ("If the claim is plainly based on state law, Section 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."). Indeed, if the facts of a given case could give rise to an action under a CBA as well as a separate state law claim, preemption does not attach. See Lingle, 486 U.S. at 408 (noting, in the event resolution of a state law claim "involves attention to the same factual considerations as the contractual determination, such 'parallelism' does not mandate preemption"). The fundamental question in evaluating Section 301 preemption is whether resolution of the state law claim turns on the meaning

of a collective bargaining agreement. See id. at 405-06.

**C.     Decision**

Plaintiff's state law claims are not preempted by Section 301 of the LMRA.

1. Wrongful Discharge

The Complaint alleges a common law claim for wrongful discharge under *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (1980).  "[A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce*, 417 A.2d at 512.  An action in tort may be based on the duty of an employer not to discharge an employee for refusing to perform an act that is in clear violation of public policy.  Id.

Plaintiff claims she was fired in violation of a clear mandate of public policy for reporting alleged wrongful conduct by Palisades's nurses.  (Compl. ¶ 36.)  Plaintiff alleges that she engaged in legally protected activity within the meaning of New Jersey law, and that Palisades retaliated against her in various ways, including terminating her employment.  (Pl.'s Br. 2.)  State another way, she is not alleging that her termination was a violation of the CBA.

Here, the Court need not interpret the language of the CBA as Defendants argue.[2]

---

[2] Defendants rely on two non-binding cases, Riccio v. Prudential Ins. Co. of America, No. 92-2195, 1992 WL 281159 (D.N.J. Sept. 21, 1992) and Carrington v. RCA Global Comm., Inc., et al., 762 F.Supp. 632 (D.N.J. 1991), in support of their contention that the wrongful discharge claim is preempted.  These cases are distinguishable.  The plaintiffs in these cases did not bring a wrongful discharge claim under *Pierce*.  Rather, the claims for wrongful termination were based on a breach of an agreement within the scope of a collective bargaining agreement, and breach of duty by the

The simple fact is Plaintiff is not attempting to show that the discipline imposed violated the CBA. Rather, Plaintiff claims she was terminated in violation of state law. Hence, her claim is not intertwined with and does not require the interpretation of the CBA.

      2. <u>Intentional and Negligent Infliction of Emotional Distress</u>

Plaintiff alleges that Defendants intended to cause and/or negligently caused Plaintiff to experience severe emotional distress. (Compl. ¶¶ 41, 47.) To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish intentional and outrageous conduct which caused her distress. <u>See</u> <u>Griffin v. Tops Appliance City, Inc.</u>, 766 A.2d 292, 296 (App. Div. 2001). A claim for negligent infliction of emotional distress requires a plaintiff to show: (1) defendant owed a duty of reasonable care; (2) defendant breached that duty; (3) plaintiff suffered severe emotional distress, and (4) the breach was the cause of the injury. <u>See</u> <u>Dello Russo v. Nagel</u>, 817 A.2d 426, 435 (App. Div. 2003). Plaintiff need not resort to the CBA to establish her claims.

Citing no relevant or binding authority, Defendants argue that Plaintiff's claims require the Court to analyze the question of whether Palisades properly discharged Plaintiff. The Court disagrees. Plaintiff alleges that Defendants' unlawful conduct caused her emotional distress. By contrast, Plaintiff does not allege that a termination in violation of the CBA resulted in her injury. For the same reasons stated above, Plaintiff's allegations do not implicate the CBA in any way and therefore the Court need not look to

---

union to advise of rights under a collective bargaining agreement.

it for resolution of the claim.

   3. Breach of the Implied Covenant of Good Faith and Fair Dealing[3]

Plaintiff alleges that "all employment relationships [have] an implied duty of good faith and fair dealing" and that Palisades breached that duty. (Comp. ¶¶ 86-87.) Bad faith or ill motive is an element of a cause of action for breach of the covenant. Seidenberg v. Summit Bank, 791 A.2d 1068, 1078 (App. Div. 2002). Like Plaintiff's other causes of action, this claim does not require an interpretation of the CBA. Essentially, Plaintiff alleges that her wrongful termination amounts to a breach of the implied covenant of good faith and fair dealing by Palisades. Plaintiff need only demonstrate that Palisades's actions were motivated by bad faith to establish her claim. See Lingle, 486 U.S. at 407 (purely factual questions about an employer's conduct and motives in a retaliatory discharge case do not require a court to interpret any term of a collective-bargaining agreement). Therefore, for the same reasons that Plaintiff's common law wrongful termination claim does not require an analysis under the CBA, any breach of the employment relationship need not be examined in that context.

   4. Unjust Enrichment

Plaintiff's Complaint states a claim for unjust enrichment. Plaintiff alleges that Palisades failed to pay her for time worked, including 120 hours of unpaid vacation and personal time. (Pl.'s Br. 2.) A plaintiff must show that a defendant received a benefit and

---

[3] Defendants' brief addresses Plaintiff's breach of contract claim originally pled in the Complaint. Plaintiff voluntarily dismissed the claim with prejudice on June 27, 2013. Therefore, it will not be addressed herein.

that retention of that benefit without payment would be unjust in order to establish a claim. VGR Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (1994). Defendants argue that Plaintiff's claims are independent from her wage claim under the NJWHL, and that an adjudication would not be possible without reference to the CBA. The Court disagrees.

Plaintiff claims she was not paid wages at all for certain hours worked. A claim for unpaid wages would not make the CBA a substantial issue in the case. An evaluation of Plaintiff's claim—that she was not paid for time worked—would not be dependent on the meaning of any term in the CBA. This is a simple state law claim for unjust enrichment. Plaintiff need only show that Palisades received the benefits of her time and that it would be unjustly enriched should it not be made to compensate for it.

5. *Prima Facie* Tort

Plaintiff alleges that "[d]efendants, either themselves, or through their agents, have intentionally harmed [her.]" (Compl. ¶ 82.) Under New Jersey law, *prima facie* tort is designed to redress unjustified "intentional, willful or malicious harms" where no adequate common law or statutory remedy exists. Mehlman v. Mobil Oil Corp., 676 A.2d 1143, 1163 (App. Div. 1996). Plaintiff need only show that Defendants' actions in allegedly wrongfully accusing her of stealing a narcotic drug, claiming that she falsified a medical record, suspending, and then ultimately terminating her employment were committed maliciously. The analysis of Plaintiff's claim calls for an inquiry into what Defendants did and why they did it. Thus, similar to the other causes of action, Plaintiff's

claim for *prima facie* tort does not implicate the CBA in any way, and the Court need not look to it to adjudicate the claim.

## CONCLUSION

For the reasons set forth, it is respectfully recommended that Plaintiff's motion to remand be **GRANTED**.[4]

 

 

                                                      s/Mark Falk
                                                     **MARK FALK**
                                                     **United States Magistrate Judge**

**Dated: September 24, 2013**

---

[4] Here, Plaintiff claims that the award of counsel fees associated with Plaintiff's efforts to remand are warranted. Although the Court agrees that Plaintiff's claims are not preempted, the law governing preemption in the context of the LMRA is sufficiently complex such that the Court is unable to conclude that the removing party lacked an objectively reasonable basis seeking removal. See Martin v. Franklin Capital Corp., 536 U.S. 132, 141 (2005). Therefore, the Court declines to recommend an award of costs and fees.